The bill in this case is filed for maintenance and a counter-claim is filed by the defendant for absolute divorce on the ground of extreme cruelty. There was testimony given as to acts of cruelty on the part of the wife toward the husband and likewise on the part of the husband toward the wife.
There can be little doubt that both complainant and defendant were highly temperamental, excitable and had a hard time living together in peace and harmony. Financially, they were in good circumstances. It may be said that the husband was quite affluent financially. They frequently quarreled, however, over money matters and the complainant's alleged desire to elevate the standard of their living. Verro says his wife annoyed him continuously about going to live in Italy, asserting that his daughters would be able to make a more advantageous marriage there owing to the relatives *Page 365 
which she (the wife) had who were connected with families of the nobility. Mrs. Verro denies this, but says, in the discussion of financial affairs, she was treated with an entire lack of consideration.
During the progress of the trial it was evident, from the testimony, that the defendant was endeavoring to establish a ground for divorce on the refusal of Mrs. Verro to have sexual intercourse from the year 1924, and, subsequently, an application was made to the court to amend the pleadings in this respect to meet the proofs. There was no objection to the amendment, and, under the rules, it was granted. After giving further consideration to the testimony as to this relationship, I am still of the same view as expressed at the end of the hearing — that the complainant is entitled to relief and a divorce to Verro must be denied. It is well understood that convincing proof of conduct of this kind is difficult to secure. The only daughter of the couple, who appeared as a witness, testified that her mother frequently entered the bedroom of Verro since 1924 attired in her nightdress and stayed in this room for a considerable time. The daughter was examined at length by defendant's solicitor about these events, but her testimony remains unshaken. The wife says she continued to have sexual intercourse long after 1924. The only doubt about the truth of the wife's statement would arise from the fact that this couple were in such frequent controversy. I am of the opinion, however, that the proof of Mrs. Verro's refusal to have sexual intercourse is not satisfactorily established and I find, too, no genuine effort on the part of the husband to secure the return of his wife. Relief cannot be had until he has made this effort. His testimony on the witness-stand indicates that he wants to have nothing further to do with her.
To establish desertion, based on refusal to have sexual relationship, it is encumbent upon the party alleging such desertion to prove there was continuous, willful and obstinate desertion. Rector v. Rector, 78 N.J. Eq. 386; Raymond v.Raymond, 79 Atl. Rep. 430; Parmly v. Parmly, 90 N.J. Eq. 490;Haskell v. Haskell, 99 N.J. Eq. 399.
There is testimony in this case that Verro left his wife in *Page 366 
September, 1925, and stayed away about six months, returning in March, 1926, finally separating from her in December, 1926. This evidence was corroborated by the daughter. The daughter testified that the leaving in 1925 was caused by the complainant asking for financial allowance. Verro says he left because he was tired of being nagged. After leaving in 1925 he was away six months when he was sent for by Mrs. Verro, owing to the illness of her daughter. This testimony is offered by the wife and the daughter who was a witness. Another daughter of the couple was not called at the trial. Verro's excuse continually given during the hearing for his leaving his wife was that she constantly quarreled and nagged him. A husband, of course, does not have to live with a wife who annoys or quarrels with him, but, unless she is guilty of some matrimonial offense, he must support her.
A decree for the complainant should be entered.